UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL FIORITO,<br><br>　　　　　Petitioner,<br><br>　v.<br><br>WARDEN,<br><br>　　　　　Respondent. | No.  2:23-cv-3054 WBS AC P<br><br>ORDER AND<br><br>AMENDED FINDINGS AND RECOMMENDATIONS |

Petitioner, a federal prisoner, filed an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2241.  Currently before the court is respondent's motion to dismiss and response to the petition.  ECF No. 7.  On July 28, 2025, the undersigned issued findings and recommendations (ECF No. 14), to which petitioner has filed objections (ECF No. 15). Petitioner's objections assert, in part, that the undersigned failed to consider Melnik v. Dzurenda, 14 F.4th 981 (9th Cir. 2021), which held that prisoners have the right to access the evidence to be used in a disciplinary hearing.  ECF No. 15 at 15-17.  The July 28, 2025 findings and recommendations will therefore be withdrawn and are amended to add subsection IV.D.vii, which address the argument made in petitioner's objections.

I.　　Background

In May 2009, petitioner was convicted by a jury in the District of Minnesota of one count of conspiracy to commit mail fraud and six counts of mail fraud.  ECF No. 7-1 at 183 (Docket

entry for United States v. Fiorito, No. 07-cr-0212 PJS JSM (D. Minn), ECF 277).[1]  In April 2010, petitioner was sentenced to a total term of 270 months in prison.  Id. at 194 (Docket entry for ECF No. 436).  In 2022, petitioner was found guilty of violating Code 313 (lying to correctional officers) and Code 314 (counterfeiting, forging, or unauthorized reproduction of an article of identification, money, security, or official paper) after he was found with forged documents and a notary seal among his possessions, and his good conduct time was reduced by 14 days.  ECF No. 1 at 6; ECF No. 7 at 1, 3; ECF 7-1 at 37.  The record reflects that petitioner is no longer incarcerated.  ECF No. 13 at 1.

  II.     Petition

Petitioner asserts that his due process rights were violated when he was wrongfully found guilty of fictitious disciplinary violations that resulted in the loss of fourteen days of good conduct time.  ECF No. 1 at 3, 6-7.  Specifically, he alleges that he never received a copy of the initial incident report or the findings from the disciplinary hearing; the disciplinary hearing officer switched the codes petitioner was alleged to have violated at the hearing, leaving him unable to raise a proper defense against the charges; his representative "did nothing;" and he was denied the ability to call the witnesses he requested.  Id. at 5-7.

After he was found guilty, petitioner attempted to appeal the violation even though he did not receive a copy of the report from the disciplinary hearing and proceeded through the final level of appeal, despite never receiving responses.  Id. at 5.  He argues that his appeal should be deemed exhausted or, alternatively, that exhaustion should be deemed waived due to unavailability.  Id.

Petitioner asks that the disciplinary be expunged or that he be given a new disciplinary hearing.  Id. at 8.

  III.    Motion to Dismiss

        A.  Respondent's Motion

Respondent argues that the petition should be dismissed because petitioner did not exhaust

---

[1] The court has confirmed that the docket accurately reflects the contents of the documents cited by this court.

his administrative remedies prior to filing suit. ECF No. 7 at 4. It further argues the petition is moot because petitioner has been released from formal Bureau of Prisons (BOP) custody and was afforded the maximum possible award of FSA credits. Id. As a result, restoring the fourteen days of good time credits would not shorten the length of petitioner's custody. Id.

### B. Petitioner's Opposition

Petitioner opposes the motion and argues that his claim for relief is not moot because if he were to prevail in his appeal, his prerelease custody would be reduced by fourteen days, providing an earlier start to his supervised release. ECF No. 13 at 1. He also reiterates his claims that he exhausted his administrative remedies. Id. at 3-5.

### C. Discussion

#### i. Mootness

"Article III of the Constitution limits the 'judicial power' of the United States to the resolution of 'cases' and 'controversies.'" Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc., 454 U.S. 464, 471 (1982). "[I]f in the course of litigation a court finds that it can no longer provide . . . any effectual relief, the case generally is moot." Uzuegbunam v. Preczewski, 592 U.S. 279, 282 (2021).

Respondent argues that because petitioner has already received the maximum possible award of FSA credits and been released from formal custody, there is no further relief for him to obtain. ECF No. 7 at 4. If petitioner was seeking the restoration of FSA credits, the petition would indeed be moot. The time credits awarded under the FSA are to be applied to prerelease custody or supervised release with a maximum of 365 days applied to early supervised release. 18 U.S.C. §§ 3624(g)(3), 3632(d)(4)(C). Since petitioner has been transferred to prerelease custody and been credited the maximum credits toward early supervised release, ECF No. 7-1 at 13, there would be no further relief to grant if he sought restoration of FSA credits. See Peneuta v. Ricolcol, No. 2:23-cv-6361 PA JC, 2024 WL 2884218, at *5, 2024 U.S. Dist. LEXIS 103081, at *13 (C.D. Cal. May 21, 2024) (petition moot where petitioner sought application of FSA credits and immediate release from custody but had already had FSA credits applied and been released from custody) (collecting cases), adopted by 2024 WL 2882548, 2024 U.S. Dist. LEXIS

1 101798 (June 6, 2024). However, in this case, petitioner is challenging the loss of good conduct

2 time, not FSA credits,[2] and respondent has offered nothing to contradict petitioner's assertion that

3 restoration of the fourteen days of good conduct credits would shorten his statutory release date

4 and reduce his time in prerelease custody, a claim which the exhibits appear to support. See ECF

5 No. 7-1 at 13-14 (showing projected release dates with separate applications for FSA credits and

6 good conduct credits). It therefore appears that the petition is not moot.

           ii.    Exhaustion

8 Administrative exhaustion is not statutorily required by § 2241 itself. Laing v. Ashcroft,

9 370 F.3d 994, 997 (9th Cir. 2004) (quoting Castro-Cortez v. INS, 239 F.3d 1037, 1047 (9th Cir.

10 2001)). However, "[a]s a prudential matter, courts require that habeas petitioners exhaust all

11 available judicial and administrative remedies before seeking relief under § 2241," though this

12 requirement can be waived. Ward v. Chavez, 678 F.3d 1042, 1045 (9th Cir. 2012) (citation

13 omitted). Exhaustion can be waived "where administrative remedies are inadequate or not

14 efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will

15 result, or the administrative proceedings would be void." Liang, 370 F.3d at 1000 (quoting SEC

16 v. G.C. George Sec., Inc., 637 F.2d 685, 688 (9th Cir. 1981)). Petitioner bears the burden of

17 showing exhaustion should be waived. See Leonardo v. Crawford, 646 F.3d 1157, 1161 (9th Cir.

18 2011) (remanding with instructions to dismiss for failure to exhaust because petitioner did not

19 demonstrate grounds for excusing exhaustion).

20 A prisoner has twenty days to submit an appeal of a disciplinary hearing to the Regional

21 Director on a BP 10 form. 28 C.F.R. §§ 542.14(d)(2), 542.15(a). The Regional Director has

22 thirty calendar days in which to respond. Id. § 542.18. The response deadline can be extended up

23 to thirty days and the inmate is to be notified of the extension in writing. Id. "If the inmate does

24 not receive a response within the time allotted for reply, including extension, the inmate may

25 consider the absence of a response to be a denial at that level." Id. The inmate then has thirty

---

[2] Although petitioner alleges that he was unable to earn FSA credits while in transit after the disciplinary, he does not request those credits be restored as part of the relief he seeks. ECF No. 1 at 7-8.

4

1  calendar days to appeal the Regional Director's response to the General Counsel using the BP 11
2  form. Id. § 542.15(a).  The General Counsel has forty calendar days to respond, though this
3  deadline can be extended twenty days with written notification to the inmate. Id. § 542.18.
4  "Appeal to the General Counsel is the final administrative appeal." Id. § 542.15(a).

5       An inmate's deadlines to appeal may be extended "[w]hen the inmate demonstrates a valid
6  reason for delay" such as those set forth in 28 C.F.R. § 542.14(b). Id. § 542.15(a).  Valid reasons
7  for delay include "an extended period in-transit during which the inmate was separated from
8  documents needed to prepare the Request or Appeal" and "indication by an inmate, verified by
9  staff, that a response to the inmate's request for copies of dispositions . . . was delayed." Id.
10 § 542.14(b).

11      In this case, petitioner asserts that after he was found guilty of the disciplinary violation,
12 he attempted to obtain a BP 10 form to start the grievance process but was not given one. ECF
13 No. 1 at 5.  He then spent three months being transferred to various BOP facilities and was told
14 that he had to wait until he got to his destination facility before he could start the process.  Id.
15 Once petitioner finally arrived at his destination, his counselor told him to wait on initiating the
16 process until he had a copy of the report from the disciplinary hearing but was later told to
17 proceed without the report. Id.  Petitioner received a BP 10 form on October 24, 2022, and
18 submitted it on October 25, 2022, but never received a response. Id.  On December 12, 2022,
19 petitioner sent a BP 11 form to the BOP's Central Office, to which he also never received a
20 response. Id.

21      Respondent summarily argues that "Petitioner has not exhausted the BOP administrative
22 remedy process" with citation to the attached appendix.  ECF No. 7 at 4.  The attached
23 declaration and records indicate that petitioner's BP 10 form was received on December 19, 2022,
24 and rejected the same day because it had more than one continuation page, was untimely, and did
25 not include a staff verification stating the reasons the appeal was untimely.  ECF No. 7-1 at 10,
26 151.  The BP 11 form was received on December 20, 2022, and rejected on January 5, 2023.
27 ECF No. 7-1 at 10, 152.  The response concurred with the lower-level response and noted that if
28 staff provided a memo stating the late filing was not petitioner's fault, then he could resubmit it at

1  the lower level. Id. In reply, petitioner reiterates his claim that he did not receive a copy of his
2  disciplinary hearing report to initiate the appeals process or copies of the responses to his appeals.
3  ECF No. 13 at 3-4. He further asserts that the reasons listed for rejecting his appeal are contrary
4  to the regulations. Id. at 4.

5        Although respondent presents evidence showing petitioner's appeals were rejected and the
6  reasons for those rejections, it offers no evidence to contradict petitioner's sworn assertions that
7  he was repeatedly directed to wait to submit his BP 10 form and that his counselor submitted a
8  memo explaining the delay[3] (ECF No. 1 at 5; ECF No. 13 at 3-4). Nor does respondent's
9  evidence contradict petitioner's claim that he never received the responses to his appeals such that
10 he would have known there were defects he needed to cure. The undersigned therefore finds that
11 to the extent petitioner's appeal was not exhausted because it was rejected at both levels, any
12 failure to exhaust in this instance should be excused.

13       D.  Conclusion
14       For the foregoing reasons, the court finds that the petition is not moot and that petitioner's
15 failure to exhaust his administrative remedies should be excused. The motion to dismiss on these
16 grounds should therefore be denied.

17   IV.  Answer
18       A.  Respondent's Answer
19       Respondent contests petitioner's claims that he was not provided copies of the incident
20 report and hearing officer's findings, that his staff representative did nothing, and that he was
21 denied exculpatory witnesses. ECF No. 7 at 5-8. It further argues that the hearing officer's
22 amendment of the codes petitioner was charged with violating did not violate due process because
23 the charges were based upon the same prohibited conduct and that there was some evidence to
24 support the guilty finding. Id. at 6-7 & n.4. On this basis, respondent argues the petition should
25 be denied because petitioner's due process rights were not violated.

---

[3] While the records proffered by respondent indicate that the appeal was rejected because a staff memo was not submitted, respondent does not include a copy of the appeal at issue and the accompanying declaration does not establish any personal knowledge regarding the contents of petitioner's appeal. ECF No. at 10, 151.

6

B. Reply

In his reply, petitioner maintains that the charges against him were falsified and that he never admitted to possessing the documents at issue. ECF No. 13 at 2. He also asserts that he never received the incident report or the Disciplinary Hearing Officer (DHO) findings and that the change in codes at the hearing made it harder for him to raise an effective defense. Id. at 3, 5. He argues that because the code was changed from a 200 series violation to a 300 series violation, he should not have been able to lose time credits unless he had violated the same code within the past year. Id. at 5.

C. Disciplinary Violation and Proceedings

The incident report for the disciplinary at issue contains the following description of the incident:

> On April 7, 2022, an SIS Investigation concluded that inmate Fiorito, Michael, Reg. No. 00414-424, violated Bureau of Prisons policy. Specifically, on March 14, 2022, at approximately 0845, while searching inmate Fiorito's incoming property, staff discovered notarized documents from Attorney Shunta McBride, one of which was filled out for power of attorney while the other was blank. Also discovered was a notary seal that appeared to have been cut out and taped to a blank sheet of paper, which was placed on another sheet of paper and be [sic] copied to appear as if a document had been properly notarized. It also appears that the notary signatures for Shunta McBride do not match on both documents. SIS contacted Shunta McBride who attested that she had never notarized anything for inmate Fiorito and would not have notarized a blank document (sheet of paper). Inmate Fiorito had a copy of her seal in his possession to illegal [sic] notarize various documents. Inmate Fiorito stated, Shunta McBride had notarized documents at USP Atlanta while he was there. However, he stated he did not make the blank power of attorney form, nor did he know how the blank seal was in his property.

ECF No. 7-1 at 39. Petitioner asserts that upon arrival, his property was mixed up with the property of three other inmates and that the paper with the notary stamp copied on it was found in the property of Dexter Ross. ECF No. 1 at 6. He denies saying anything other than that the paper was found in Ross's property. Id.

An incident report was issued April 7, 2022, and petitioner was charged with disruptive conduct (Code 299) most like possessing stolen property (Code 226), and lying or providing a false statement to a staff member (Code 313). ECF No. 7-1 at 39. The charges were referred by

7

the Unit Disciplinary Committee (UDC) to the DHO on April 12, 2022. Id. at 40. The incident report and DHO report both indicate that petitioner was provided a copy of the incident report on April 8, 2022, though the DHO report notes that petitioner did not recall receiving a copy of the report. Id. at 34-35, 39, 41. Petitioner asserts that he was issued an incident report for possession of stolen property and lying to a staff member on April 25, 2022, but never saw the report. ECF No. 1 at 6. He found out about the incident report on April 28, 2022, when he had a UDC hearing, and he advised his counselor that he had never received a copy of the incident report. Id. His counselor said he would get petitioner a copy but never did. Id.

A DHO hearing was held on May 3, 2022. ECF No. 7-1 at 34. At the hearing, the DHO amended the charge of disruptive conduct (Code 299) most like possessing stolen property (Code 226) to counterfeiting, forging, or unauthorized reproduction of an article of identification, money, security, or official paper (Code 314). Id. at 35-36. Petitioner was found guilty of the amended charge and of lying to staff (Code 313). Id. at 36. Evidence considered by the DHO included the incident report; the SIS investigation; notarized documents and photographs of the cut-out notary stamp found in petitioner's property; a memo from correctional officer Zaudtke, who originally discovered the documents and stamp; petitioner's multiple statements that he was not guilty; and petitioner's assertion that his property was mixed up with three other inmates' property, that he would mail stuff out to the notary and she would mail it back, that he believed it was his power of attorney, and that he did not copy anything. Id. at 36-37. The DHO report includes a statement from petitioner's staff representative stating that he was unable to identify an inmate or staff member named Michael Ross, and that he also searched using the first name Mathew[4] and using his description and different ages. Id. at 34. Inmate Arafat, who petitioner had indicated would testify that the copy of the seal was found in another inmate's property, provided a written statement that he was "not aware of any incident regarding his property in R&D" and that they had not had any discussions about it. Id. at 35, 43. The DHO report indicates it was delivered to petitioner on May 13, 2022. Id. at 38.

---

[4] One of the notarized documents purported to verify the documents had been signed by a "Matthew Ross III." ECF No. 7-1 at 45.

8

Petitioner asserts that that his staff representative refused to contact Dexter Ross or call other unspecified witnesses. ECF No. 1 at 7. He further asserts the DHO denied his request to continue the hearing when she notified him that she was amending the charges and that he never received a copy of the DHO's findings. Id.

### D. Discussion

#### i. Legal Standard for Disciplinary Hearings

"Habeas corpus jurisdiction is available under 28 U.S.C. sec. 2241 for a prisoner's claims that he has been denied good time credits without due process of law." Bostic v. Carlson, 884 F.2d 1267, 1269 (9th Cir. 1989), overruled in part on other grounds by Nettles v. Grounds, 830 F.3d 922, 931 (9th Cir. 2016). However, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." Wolff v. McDonnell, 418 U.S. 539, 556 (1974). Rather, with respect to prison disciplinary proceedings that include the loss of good-time credits, an inmate must receive (1) twenty-four-hour advanced written notice of the charges against him, id. at 563-64; (2) "a written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action," id. at 564 (citation and internal quotation marks omitted); (3) an opportunity to call witnesses and present documentary evidence where doing so "will not be unduly hazardous to institutional safety or correctional goals," id. at 566; (4) assistance at the hearing if he is illiterate or if the matter is complex, id. at 570; and (5) a sufficiently impartial fact finder, id. at 570-71. A finding of guilt must also be "supported by some evidence in the record." Superintendent v. Hill, 472 U.S. 445, 454 (1985).

In this case, petitioner claims that he was denied due process when he was not given advance written notice of the charges, received inadequate representation, was denied the ability to present exonerating witnesses, and did not receive a copy of the hearing officer's findings. ECF No. 1 at 5-7. The undersigned will address each of the alleged violations in turn.

#### ii. Notice of Charges

First, petitioner alleges that his right to receive written notice of the charges at least twenty-four hours in advance of the hearing was violated when he did not receive a copy of the

incident report and the hearing officer converted the charge from possession of stolen property to counterfeiting, forging, or unauthorized reproduction of a document, article of identification, money, security, or official paper at the hearing. Id. at 7-8; ECF No. 13 at 2, 5. Respondent argues that petitioner did in fact receive a copy of the incident report, as reflected in the record, and that the hearing officer was within her authority to amend the charges based on the incident report. ECF No. 7 at 6-7 & n.4.

While the records submitted by respondent indicate that petitioner was provided a copy of the incident report on April 8, 2022, by M. Weber, ECF No. 7-1 at 39, petitioner denies this claim, ECF No. 13 at 2. The record provided by respondent consists of a copy of the incident report that includes a section for the name and signature of the officer who delivered a copy to the inmate, along with the date and time. ECF No. 7-1 at 39. The boxes are filled in with typed responses, and no signature from the officer or petitioner. The court therefore assumes that petitioner did not receive a copy of the incident report prior to the hearing. However, not receiving a copy of the incident report prior to the disciplinary hearing does not necessarily mean that petitioner did not receive advanced written notice of the charges.

In this case, the records include a Notice of Discipline Hearing Before the DHO that is initialed by petitioner and includes the charges against him ("Disruptive conduct (ML) possessing stolen prop./Lying falsifying statement"), date of the charged offense ("4/7/22"), and code numbers ("299/226/313"). Id. at 43. It also includes the witnesses that petitioner wanted and what testimony he believed they would provide. Id. Specifically, petitioner indicated that inmate Arafat would testify that "[t]he copy of the seal was found in another inmates property" and Dr. Wood would testify "[t]hat SIS Jacobson said on the 22nd of March the investigation was completed." Id. The incident report reflects that petitioner stated he had gotten documents notarized at the prison and that he denied making a blank power of attorney form or knowing how the seal got in his property. Id. at 39. Petitioner's own allegations further state that that he told the officer "that the paper was found in Dexter Ross's property, not mine," and that he told his staff representative that Ross "would admit it was his property and his paper with the notary stamp on it." ECF No. 1 at 6-7; ECF No. 13 at 3.

1    The evidence and petitioner's own allegations therefore make it clear that he was well
aware of both the initial charges against him and the factual basis for those charges, including the
nature of the documents found in his property.  Because petitioner was aware of the factual basis
for the charges and that basis included the possession of a notarized, blank power of attorney
form; a copy of a notary seal; and a notarized, completed power of attorney form, he was on
sufficient notice that he could be charged with counterfeiting, forgery, or unauthorized
reproduction.  See Bostic, 884 F.2d at 1270-71 (petitioner received adequate notice under Wolff
where incident was described as stealing but petitioner was found guilty of possession of
contraband because "[t]he incident report described the factual situation that was the basis for the
finding guilt of possession of contraband and alerted Bostic that he would be charged with
possessing something he did not own."); Mancha v. Thomas, 550 F. App'x 426, 427 (9th Cir.
2013) (no due process violation where prisoner was found guilty of a different violation than
charged in incident report).

Finally, petitioner alleges no prejudice that resulted from not receiving a copy of the
incident report and makes only a conclusory assertion that the change in charges denied him the
ability to prepare a defense because there are no similarities between a charge of forgery and a
charge for possession of stolen property.  ECF No. 1 at 6, 8; ECF No. 13 at 5.  As addressed
above, petitioner was clearly aware of the factual basis for his charges and he marshalled facts
and prepared a defense in response.  He does not identify what additional facts he would have
offered or what additional defense he would have put forth, nor is it clear what other defense he
could have argued considering that he consistently denied ever possessing the documents at issue
and claimed that they belonged to another inmate.

For these reasons, the undersigned finds that petitioner received adequate notice of the
charges prior to his disciplinary hearing and, to the extent there were any deficiencies with the
form of the notice he received, the error was harmless.  See Graves v. Knowles, 231 F. App'x
670, 672 (9th Cir. 2007) (applying harmless error analysis to disciplinary due process claim);
Murphy v. Tate, No. 1:22-cv-0124 ADA EPG, 2022 WL 16950464, at *5, 2022 U.S. Dist. LEXIS
207178, at *13-15 (E.D. Cal. Nov. 15, 2022) (no violation where petitioner received Notice of

11

Discipline Hearing Before the DHO before hearing, was aware of factual basis, and alleged no prejudice or harm from not receiving incident report prior to hearing), adopted by 2023 WL 1997668, 2023 U.S. Dist. LEXIS 25301 (Feb. 14, 2023).

### iii. Inadequate Assistance

Petitioner asserts that he was denied assistance and the ability to call witnesses when his representative refused to call staff witnesses or contact Dexter Ross—who petitioner asserts would have admitted to owning the paper with the notary stamp—and denied him the ability to examine the evidence. ECF No. 1 at 7; ECF No. 13 at 3. However, prisoners are entitled to assistance only when they are illiterate or the matter is complex, and petitioner has not demonstrated that either circumstance existed here. Moreover, as discussed below, petitioner was not denied the ability to call witnesses. The allegedly deficient assistance of petitioner's staff representative therefore fails to establish a violation of petitioner's due process rights.

### iv. Opportunity to Call Witnesses

Petitioner argues that he was denied witnesses who would have exonerated him. ECF No. 1 at 7; ECF No. 13 at 3. However, though petitioner makes references to "several staff witness's [sic]," he does not identify who any of those prospective staff witnesses or what testimony they would have presented. ECF No. 1 at 7. Instead, the only witness he identifies is "Dexter Ross," who he claims would have testified that the copy of the notary stamp was his. Id.; ECF No. 13 at 3. But the record reflects that petitioner requested a "Michael Ross" as a witness, not "Dexter Ross," and petitioner's staff representative attempted to locate the witness based on the information petitioner provided. ECF No. 7-1 at 34. It therefore appears that any inability to have Ross as a witness was due to petitioner's misidentification, not prison's staff's refusal.

The disciplinary record also reflects that Arafat, the other inmate petitioner identified as a witness, stated that he had no knowledge of the incident and the staff witness he requested was for the purpose of testifying that SIS Jacobson said the investigation was completed on March 22. Id. at 35, 43. Considering Arafat's statement and the purpose for which petitioner wanted Jacobson as a witness, their testimony was irrelevant to petitioner's defense and any exclusion was harmless. As such, there was no violation of petitioner's due process rights. See Fourstar v.

12

1  Copenhaver, 764 F. App'x 628 (9th Cir. 2019) ("a disciplinary hearing officer may exclude a
2  witness's testimony if that testimony is irrelevant" (citing Wolff, 418 U.S. at 566-67)); Graves,
3  231 F. App'x at 673 (no due process violation where investigative employee failed to interview
4  staff and inmate witnesses when petitioner did not indicate what information they would have
5  provided in support of his defense).

### v. Copy of DHO Findings

Petitioner claims that he was never provided a copy of the findings from the disciplinary hearing. ECF No. 1 at 5, 7. Even if the court assumes that petitioner did not receive a copy of the findings, there is no evidence that his rights were impaired. Although petitioner alleges that he could not appeal the decision without a copy of the DHO's findings, he attempted to do so anyway. To the extent the failure to provide a copy of the DHO's findings prevented petitioner's appeal from being exhausted, this court did not bar his claim for lack of exhaustion. Nor did the alleged failure to provide petitioner with a copy of the DHO's findings otherwise impede petitioner's ability to pursue his claims in this court, and he has since received a copy of the findings as it is attached to respondent's motion to dismiss. On these facts, the court finds no due process violation. See Brown v. McGrew, No. 5:12-cv-1479 SVW JPR, 2013 WL 6512948, at *5,[5] 2013 U.S. Dist. LEXIS 174296, at *14[6] (Dec. 12, 2013) ("although Wolff requires that an inmate be given 'a written statement by the factfinders as to the evidence relied on and reasons for the disciplinary action,' it does not require that the inmate receive that written statement within any particular amount of time (quoting Wolff, 418 U.S. at 564-65)); Kaapuni v. Birkholz, No. 2:23-cv-9945 MRA ADS, 2024 WL 5077925, at *4, 2024 U.S. Dist. LEXIS 225287, at 10 (C.D. Cal. Oct. 15, 2024) (fact that petitioner received copy of DHO report with respondent's answer suggests any failure to provide copy of the report is moot), adopted by 2024 WL 5077756, 2024 U.S. Dist. LEXIS 224395 (Dec. 11, 2024).

////

---

[5] Combined report and recommendation and order adopting report and recommendation.
[6] Report and recommendation only. Order adopting report and recommendation at 2013 U.S. Dist. LEXIS 174296.

### vi. Excessive Punishment

Finally, petitioner appears to allege that he was subject to excessive punishment because the loss of good time conduct credits was not an available sanction for a level 300 infraction unless he had been found guilty of the same kind of offense in the previous twelve months. ECF No. 13 at 5. Table 1 of 28 C.F.R. § 541.3 provides that, for a Moderate Severity Level Prohibited Act, such as a Code 314 offense, the DHO may disallow up to 14 days of good conduct time. Table 2 of 28 C.F.R. § 541.3, which provides additional sanctions for repeated prohibited acts at the same security level, allows the DHO to disallow additional good conduct time for a second violation within a twelve-month period. In this case, the DHO report identifies the sanction of fourteens days loss of good time credits as "(FREQ 1)," and that sanction clearly falls within the sanctions allowed in Table 1 for a first-time 300 level offense, not within the sanctions allowed in Table 2 for a repeated offense. Accordingly, petitioner was not subject to excessive punishment.

### vii. Access to Evidence

Petitioner alleges that he asked his staff representative to let him examine the property at issue, and was told that SIS told him he could not. ECF No. 1 at 7. The Ninth Circuit has held that a prisoner has a constitutional right to access the evidence used against him in a prison disciplinary hearing, but that right may be limited for legitimate penological reasons. Melnik, 14 F.4th at 985-87. In this case, respondent has not articulated any reason for not allowing petitioner to examine the documents.[7] However, even if the court assumes that petitioner requested to see the documents during the course of the investigation and was denied as he claims, any error was harmless.

Both the petition and the incident report imply that petitioner was shown the documents after they were found in his property and he was questioned about them. ECF No. 1 at 6; ECF No. 7-1 at 39. However, even if petitioner was not shown the documents, as previously addressed, he was clearly aware of the nature of the documents found in his property. See supra,

---

[7] Petitioner does not appear to argue that he should have been provided a copy of the documents, and even if he had, denying a request for copies of forged documents and the means to forge additional documents would clearly have a legitimate penological basis.

14

1  Section IV.D.ii.  Specifically, petitioner denied making a blank, notarized power of attorney form
2  and knew that one of the documents was a copy of a notary seal, as he stated that he did not know
3  how the seal got in his property and that inmate Arafat would testify that "[t]he copy of the seal
4  was found in another inmates property."  ECF No. 1 at 6; ECF No. 7-1 at 39, 43.  Additionally,
5  the inability to examine the documents did not lead to petitioner losing out on the ability to
6  identify witnesses.  The notary whose stamp was used was contacted for a statement and, in
7  addition to petitioner's request to search for a "Michael Ross," his staff representative searched
8  for a Matthew Ross, whose name was on one of the documents.  Id. at 34, 39, 45.  Accordingly,
9  while a Mathew Ross was not able to be located, the inability to call this individual as a witness
10 was clearly not due to petitioner being denied an opportunity to examine the documents.
11 Petitioner does not identify what additional facts or evidence he would have offered or what
12 additional defense he would have submitted had he been permitted to examine the documents.  It
13 is also unclear what other defense petitioner could have argued considering that his defense, then
14 and now, is that he had no involvement with the documents and that they belonged to another
15 inmate.

   E. Conclusion

For the reasons set forth above, petitioner's due process rights were not violated.  Alternatively, any violation of due process constituted harmless error.  The petition for habeas corpus should therefore be denied.

  V. Conclusion

As set forth above, the motion to dismiss the petition as moot or unexhausted should be denied and the petition should be denied on its merits.

For the reasons set forth above, IT IS HEREBY ORDERED that the July 28, 2025 findings and recommendations (ECF No. 14) are WITHDRAWN.

IT IS FURTHER RECOMMENDED that:

1. Respondent's the motion to dismiss the petition as moot or unexhausted (ECF No. 7) be DENIED.

2. The writ of habeas corpus pursuant to 28 U.S.C. § 2241 (ECF No. 1) be DENIED.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days after being served with these findings and recommendations, petitioner may file written objections with the court.  Petitioner is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 4, 2025

*/s/ Allison Claire*
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE